Argued February 9, affirmed March 27, 1968

DEARDORFF ET UX, *Appellants, v.* NEIL-
SON ET UX, *Respondents.*
438 P. 2d 981

*James O. Goodwin,* Oregon City, argued the cause for appellants. On the briefs were Jack, Goodwin & Anicker, Oregon City.

*Gerald R. Pullen,* Portland, argued the cause for respondents. With him on the brief were Hershiser, Mitchell & Smith, Portland.

Before MCALLISTER, Presiding Justice, and O'CONNELL and DENECKE, Justices.

O'CONNELL, J.

This is a suit for the partition of real property held by plaintiffs and defendants as tenants in common. Plaintiffs appeal from a decree denying partition. The trial court held that plaintiffs held only a security interest in the property as mortgagees.

Plaintiff Bruce Deardorff and defendant Alfred Neilson were close personal friends. Deardorff was experienced in matters relating to the sale and purchase of real estate; Neilson was not. Defendants operated a flower shop and garden store which failed. They were in dire financial straits and, being unable to make the mortgage payments on their home, they lost it. They looked for another place to live and eventually were shown the property in dispute which consisted of a house, a barn, and other outbuildings on 20 acres of land. Neilson asked Deardorff to inspect the property and to assist in the negotiations for the purchase of it.

On March 24, 1962 a land sale contract was entered into between Leo Gulden and wife as sellers and the Neilsons as purchasers. Gulden had an interest as a vendee under a land sale contract with Ted Serres, on which there was unpaid the sum of $13,535.09. Gulden's interest was transferred to an escrowee after

a down payment which consisted of $2,000 in cash paid by Neilson (which he borrowed from a bank); a conveyance of plaintiffs' equity in a duplex, the equity having a value of approximately $3,000; and the execution of a promissory note for $2,344.28 on which the Neilsons were the makers with the Guldens as payees. The Neilsons assumed and agreed to pay the contract balance on the Serres contract which amounted to $13,535.09. The Neilsons did not take possession until May, 1962.

On May 15, 1962, defendants executed a bargain and sale deed to plaintiffs, conveying an undivided one-half interest in the property. The deed was not recorded until March 26, 1965. At the same time the deed was executed the parties entered into a contract, the pertinent parts of which are as follows:

"* * * * * THAT WHEREAS the Neilsons and the Deardorffs are tenants in common of a tract of real property * * * [describing it] and it being the desire of these parties to reduce to writing their previous oral agreement relative to said real property, now therefore and in consideration of the mutual promises, stipulations, covenants and conditions as hereinafter set forth, the parties do agree as follows:

"1. That Neilsons shall be entitled to the physical possession and occupancy of the above described premises for the next succeeding four years to the exclusion of the Deardorffs.

"2. That Neilsons shall pay any real property taxes levied upon said property during the occupancy thereof and shall see that the improvements thereon are adequately insured against fire loss or other damage during such occupancy, and will maintain at their own expense a premises liability policy in a sum not less than $10,000.00.

"3. That Neilsons shall keep said property and

the improvements thereon in good condition during their occupancy, reasonable wear and tear excepted.

"4. That Neilsons will particularly pay the Serres their monthly payments and their interest in said property during their occupancy and will not suffer nor permit such payments or the instrument which requires said payments to become in default in any form or manner.

"5. That in the absence of specific agreement by Deardorffs to contribute thereto, any improvements placed upon the property by Neilsons shall be conclusively presumed to be volunteered by Neilsons without expectation of contribution by Deardorffs.

"6. That Deardorffs shall pay one-half the cost of the fire insurance upon said property.

"7. That Deardorffs shall be jointly responsible with Neilsons to pay the balance owing to Golden (sic) for his interest in said property according to the terms of his agreement.

"8. That neither party has definitely agreed to any particular arrangement beyond the four year period herein provided for, except that both parties do agree to assist in the refinancing of the Serres' contract when such becomes necessary by the terms thereof and further, both parties do agree that in the event of any default by either party theri (sic) rights shall be determined by the common law of co-tenantcy (sic) and that in the event that no further agreement is made and executed in writing by the parties upon the expiration of four years, then their rights are likewise to be guided by the common law relative to co-tenantcy (sic).

"9. That both parties do agree, however, that prior to bringing any suit for partition or other action or suit involving their rights to the above described property that either party may make an offer to buy the interest of the other in writing and in cash, and that the highest of such of these offers must be accepted by the party who has made the lesser offer, unless a higher counter-offer is made

within one week, and such shall be enforceable by specific performance in a court of Equity (sic). The party who makes the highest offer for the interest of the other shall be permitted 30 days after the instrument of conveyance has been placed in escrow by the other party, to raise such cash and in the event that such is not forth coming within said 30 days period, the party making the lesser offer shall have the right to forthwith demand and receive of the other party an instrument conveying the property to himself upon payment of said lesser offer.  *   *   *"

On November 1, 1963, defendants refinanced the purchase of the property by giving a note and mortgage for $16,000 to Portland Federal Savings and Loan Association. Of this amount $13,111.38 was used to pay the balance on the Serres contract.[1] The other payments made out of the $16,000 borrowed from the savings and loan association were $1,000 to Gulden in reduction of the $2,344.28 note; $715.96 for taxes and title insurance; $623.10 to defendants personally, and the balance for miscellaneous items. Under the new loan arrangement defendants were obligated to make monthly payments of $170, of which $116.95 was to be applied to principal and interest, $32.01 to taxes, and $14.00 to insurance. Defendants received a deed from the Serres, the original vendors, and an assignment of the interest of the Guldens, their immediate vendors.

Defendants made monthly payments on the mortgage totalling $2,040. Plaintiffs supplied $500 worth

---

[1] Apparently up to this time defendants had made payments on the Serres contract since it appears that no back interest was owing and the balance had been reduced by $423.71. Defendants claim that they made payments of $170 per month beginning in May, 1962. The Neilson-Gulden contract called for monthly payments of $85.00 to Serres.

of lumber for use on the property but defendants contend that they paid for it.

In December, 1964, the barn was damaged by fire. Defendants' insurance company paid $10,000 for the loss. Of this amount, $4,000 was applied on their loan with Portland Federal Savings and Loan; $550 in payment of attorney's fees, and the rest of the proceeds were used to repair the barn and to replace certain uninsured personal property owned by defendants which was lost in the fire.

On May 3, 1965, Deardorff, through his attorney, offered to quitclaim his interest to the Neilsons for the sum of $3,500. On April 12 and April 26, 1966 Deardorff, through another attorney, requested an informal accounting and asked the Neilsons if they wished to buy Deardorff's interest. In June, 1966, plaintiffs filed the present suit for partition and an accounting.

■ Looking only at the deed and the contemporaneous agreement between the parties, the transaction would appear to create in plaintiffs an undivided interest as tenants in common with defendants. Plaintiffs contend that the written agreement must be given effect and that parol evidence is inadmissible to vary its terms. The parol evidence rule does not exclude evidence to show that a deed absolute in form is in fact a mortgage. If parol evidence were not admissible in such cases, it would be impossible for the courts to protect the necessitous borrower forced to enter into a transaction designed to appear as an absolute conveyance but in fact a mortgage. The case is not made any different by the execution of a writing in addition to the deed. Both the deed and the written agreement may be shown by parol evidence as a mere facade for the true character of the transaction.

■■ We are of the opinion that the transaction in the present case was entered into by the parties to secure a loan made by plaintiffs and not to vest in them an ownership interest in the property. In making the original purchase of the property from the Guldens, plaintiffs were not named as purchasers. If it was intended that plaintiffs were to take an interest as tenants in common with defendants, one would expect that plaintiffs would have been named as vendees in the contract with the Guldens. In that contract, defendants alone bound themselves to pay the balance due; plaintiffs did not join with defendants in undertaking this obligation. Approximately two months after the execution of the Gulden-Neilson contract, defendants conveyed an undivided interest in the property to plaintiffs. The written agreement which accompanied the deed provided that "Deardorffs shall be jointly responsible with Neilsons to pay the balance owing to Gulden for his interest in said property according to the terms of his agreement." It was also provided "that both parties do agree to assist in refinancing the Serres' contract when such becomes necessary by the terms thereof." Plaintiffs never made any payments on either Gulden or Serres contracts. Nor did plaintiffs "assist in refinancing" the contracts on November 1, 1963, when defendants obtained the loan from Portland Federal Savings and Loan Association. Again, it would seem that if plaintiffs had an interest as tenants in common, they would have joined with defendants in the execution of the note and mortgage to Portland Federal Savings and Loan Association. Why would defendants obligate themselves to pay for plaintiffs' share in the property? Further, as a result of the refinancing transaction, defendants obtained a deed from the original contract vendors

(Serres) and an assignment from their immediate vendors (Guldens). Here again, one would expect these transfers to run to both the Deardorffs and the Neilsons if a tenancy in common was intended.

Plaintiffs never made any payments to the vendors or to the mortgagee. All such payments were made by defendants. It is true, as plaintiffs contend, that a part of the payments were made with money from the insurance proceeds after the barn had been damaged by fire. But there were payments other than these and all of them were made by defendants. Thus we see that plaintiffs never carried out the terms of the written agreement by which they agreed to be "jointly responsible" to pay the balance owing on the contracts and to assist in refinancing the obligation. Further evidence supporting defendants' contention is the fact that on May 3, 1965, Deardorff, through his attorney, offered to quitclaim his interest for a cash payment of $3,500. This sum would closely approximate the amount that would be due upon a loan of $3,000 at 6% per annum for three years. The trial court found that plaintiffs' interest in the duplex had a value of approximately $3,000. We think that it is significant that Deardorff did not record the deed until it appeared that he would file a law suit against defendants. No revenue stamps had been affixed to the deed.

The testimony of the parties was conflicting on various matters. Defendants testified that the transaction between them was understood by the parties to be for security purposes and that Deardorff was brought into the original arrangement for the purchase of the property because he had a house which he could dispose of and Gulden needed a house if he sold his own to defendants. Thus, defendants contend, Deardorff's duplex provided the solution to their problem.

There are other factors which favor the conclusion reached by the trial court. Deardorff and Neilson were close friends. Neilson was in dire financial straits which Deardorff knew. Deardorff was an experienced real estate broker; Neilson had no experience in such matters. It seems apparent that the terms of the written agreement were not fully understood by Neilson. He understood the writing to have been necessary to provide Deardorff with a security on his loan. The trial court believed Neilson and disbelieved Deardorff. We think that the evidence was sufficient to satisfy the burden of proof which defendants were required to meet.

The decree of the trial court is affirmed.